IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| In re Gilbert Hospital, LLC<br><br>Debtor. | No. CV-18-03307-PHX-GMS<br><br>No. 2:14-BK-1451<br>Adv. No. - NA<br><br>**ORDER** |
| Brinkman Portillo Ronk APC,<br><br>Appellant,<br><br>v.<br><br>Michael W. Carmel Limited, et al.<br><br>Appellees. | |

Brinkman Portillo Ronk APC ("BPR" or alternatively "Appellant") appeals a Sanctions Order entered on September 24, 2018 by the United States Bankruptcy Court of the District of Arizona (the "Bankruptcy Court"). The Order required BPR to pay $30,000 to the Creditor Trust for the benefit of beneficiaries, $5,000 to creditor Southwest Medical Services, and $5,000 to Michael W. Carmel, Ltd. The Order also revoked BPR's *pro hac vice* status, effective October 1, 2018. For the reasons set forth below, that Order is vacated as to the monetary sanctions and affirmed as to the revocation of *pro hac vice*. The case is remanded to the Bankruptcy Court for further action consistent with this order.[1]

---

[1] Both Appellant and Appellees have requested oral argument. Those requests are denied because the parties have had an adequate opportunity to discuss the law and evidence and oral argument will not aid the Court's decision. *See Lake at Las Vegas Investors Group, Inc. v. Pac. Malibu Dev.*, 933 F.2d 724, 729 (9th Cir. 1991).

# BACKGROUND

On March 6, 2013, Florence Hospital at Anthem, LLC ("FHA") filed for Chapter 11 bankruptcy. On February 5, 2014, Gilbert Hospital, LLC ("GH") also filed for Chapter 11 bankruptcy. The Bankruptcy Court subsequently determined that the FHA and GH cases would be jointly administered for the purpose of confirming a joint plan of reorganization and related proceedings. The final version of the "Second Amended and Restated Joint Plan of Reorganization for Gilbert Hospital LLC and Florence Hospital at Anthem, LLC Proposed by Gilbert Hospital, LLC and Bank SNB" ("Joint Plan") was confirmed by the Bankruptcy Court on October 23, 2015. Thereafter, to resolve disputes and potential appeals, the parties negotiated a stipulated confirmation order, which was entered by the Bankruptcy Court on February 29, 2016 as a "Stipulated Order Amending Findings of Fact, Conclusions of Law and Order Confirming Second Amended Joint Plan of Reorganization and Declaring Effective Date" ("Stipulated Confirmation Order"). After the entry of the Stipulated Confirmation Order, the Creditor Trust Agreement ("Trust Agreement") was executed. Pursuant to these agreements, the Gilbert Hospital Unsecured Creditor Trust ("Trust") was formed as a mechanism for recovery for GH's unsecured creditors. David Gottlieb was appointed as trustee ("Trustee") and retained BPR as his counsel. GH and FHA were thereafter collectively managed by a newly formed entity, New Vision Health, LLC ("NVH").

On January 10, 2018, NVH filed a "Motion for Order Directing the Gilbert Hospital Unsecured Creditors Trust to Produce Information About Its Operations; and to Show Cause Why Its Trustee and Counsel Should Not be Replaced." Although the Bankruptcy Court denied NVH's request to immediately remove the Trustee and BPR, it entered an order directing the Trustee and BPR to produce a complete accounting through January 10, 2018, including detailed invoice and billing records to justify payments made to professionals; ledgers of payments made to the Trustee, BPR, and other professionals; ledgers showing reserves held for claimants and beneficiaries; and a claims register documenting allowed claims, disallowed claims, and disputed claims ("Accounting

Order"). This accounting was to be filed with the Bankruptcy Court and distributed to NVH's counsel by January 31, 2018.

In response, the Trustee filed a Motion for Reconsideration of the Accounting Order ("Motion for Reconsideration"), arguing that the Bankruptcy Court did not have jurisdiction to enter the Accounting Order. On February 1, 2018, the Bankruptcy Court entered an order setting a hearing on the Motion to Reconsider for February 15, 2018 ("Reconsideration Hearing Order"). The Reconsideration Hearing Order addressed the Trustee's arguments regarding the Bankruptcy Court's jurisdiction and cited two provisions in the Trust Agreement as authority for the Court's power to order an accounting. The Reconsideration Hearing Order further stated that seeking reconsideration did not toll the Accounting Order deadline of January 31, 2018, which had passed without the Trustee's compliance. The Bankruptcy Court then set a new filing deadline of February 9, 2018 permitting the Trustee to file the requested documents under seal, with which the Trustee timely complied.

On February 7, 2018, the Trustee filed a Rule 60(b) Motion seeking to vacate both the Accounting Order and the Reconsideration Hearing Order, arguing that the Bankruptcy Court lacked subject matter jurisdiction to order an accounting. The Trustee also filed a Motion for Stay requesting the Bankruptcy Court stay the Accounting and Reconsideration Hearing Orders pending resolution of the Rule 60(b) Motion, and a Motion to Withdraw the Reference. NVH responded to each of these motions. The February 15 hearing set in the Reconsideration Hearing Order was later continued by consent to February 28. Subsequently, NVH and the Trustee stipulated to withdraw the Motion for Reconsideration and the Motion to Withdraw the Reference. The Bankruptcy Court signed the Order approving the Stipulation on February 27, 2018. The Accounting Order and the Reconsideration Hearing Order were thus left as final orders with no pending requests for relief.

After the closure of GH's businesses, the United States Trustee moved to dismiss both bankruptcy cases. On August 1, 2018, the Bankruptcy Court held a hearing on the

Motion to Dismiss. The Bankruptcy Court expressed its intent to require the Trustee to disclose the accounting information filed in February to Trust beneficiaries and other interested parties. The Bankruptcy Court also noted its power to order an accounting and its continuing post-confirmation jurisdiction over the Trustee and the Trust. Finally, the Bankruptcy Court permitted the Trustee to file additional briefing concerning the accounting. This information was subsequently documented in a Minute Entry. On August 13, 2018, the Trustee appealed the August 1 Minute Entry to the extent that it addressed the Bankruptcy Court's power to order an accounting and continuing post-confirmation jurisdiction over the Trustee and the Trust. In addition, on August 14, 2018, the Trustee filed a motion for limited stay of the Minute Order as it related to jurisdiction of the Bankruptcy Court over the Creditor Trust and a motion to expedite the hearing on the Minute Order Stay Motion.

On August 16, 2018, the Bankruptcy Court granted the Trustee's motion to expedite and set the Minute Order Stay Motion for hearing August 30, 2018. After reviewing the Trustee's amended brief and the accounting filed under seal on February 9, 2018, the Bankruptcy Court also ordered the Trustee to file the accounting publicly by August 23, 2018, including a summary sheet setting forth the amount of fees and costs accrued by and paid to each professional assisting him in the bankruptcy through January 10, 2018 ("Second Accounting Order"). The public accounting was to be redacted only as necessary to protect attorney-client privilege or strategy. On August 23, 2018, the Trustee partially complied with the Second Accounting Order; however, the Trustee's filing omitted BPR's detailed invoice and billing records. The Trustee then filed a Notice of Appeal regarding the Accounting Order on August 24, 2018, taking issue with the portion of the Second Accounting Order requiring the Trustee to file BPR's privileged billing records.

On August 30, 2018, the parties appeared on the Minute Order Stay Motion. The Bankruptcy Court stated that it could not conclude that a stay pending appeal was appropriate, but it granted a temporary stay of fifteen days to allow the Trustee to seek a stay from the District Court. The Bankruptcy Court also discussed the partial accounting

filed by the Trustee and the fact that BPR's bills were not filed. Noting that the Trustee had failed to follow a specific order, the Bankruptcy Court entered an Order to Show Cause ("OSC") as to why the Trustee and/or BPR should not be held in contempt for violating the Court's orders requiring disclosure. Therefore, as of August 30, 2018, BPR was on notice that it could be subject to contempt. A hearing on the OSC was scheduled for September 17, 2018. On September 5, 2018, the Trustee resigned his position and was replaced by Peter Kravitz ("Subsequent Trustee"). On September 6, 2018, the Subsequent Trustee filed most of BPR's redacted bills for the required time period. On September 12, 2018, the Subsequent Trustee filed the remaining bills, completing the ordered accounting.[2]

At the hearing on September 17, 2018, the Bankruptcy Court reviewed the history of the case and discussed its concerns as to the violation of the Second Accounting Order. The Bankruptcy Court found that the violation was not merely technical nor inadvertent and that it was akin to contempt. Citing Rule 9011(c)(1), Section 105(a), and its inherent powers, the Bankruptcy Court then assessed sanctions against BPR (but neither the original nor the Subsequent Trustee). The Bankruptcy Court ordered BPR to pay $30,000 to the Creditor Trust for the benefit of beneficiaries, $5,000 to creditor Southwest Medical Services, and $5,000 to Michael Carmel "in order to deter future similar conduct." (Doc. 7-5 at 19.) The Court also revoked BPR's *pro hac vice* status in the bankruptcy case, effective October 1, 2018. Finally, the Court ordered BPR to file an updated accounting to include information from January 10, 2018 through the end of August, with an unredacted version filed under seal by September 26, 2018 and a redacted version filed publicly no later than October 9, 2018.

On September 25, 2018, BPR filed a Notice of Appeal of the Sanctions Order to the Bankruptcy Appellate Panel of the Ninth Circuit. On October 12, 2018, Appellee filed an election to proceed in District Court, transferring the appeal to this Court.

---

[2] The Subsequent Trustee later filed two Motions for Voluntary Dismissal of Appeal for the appeals based on the August 1 Minute Entry and the Second Accounting Order, stating that both appeals were moot since all requested documents had been publicly filed. These motions were granted.

**DISCUSSION**

**I.  Legal Standard**

A bankruptcy court's award of sanctions is reviewed on appeal for abuse of discretion. *In re DeVille*, 361 F.3d 539, 547 (9th Cir. 2004). The underlying factual findings leading to the award of sanctions are reviewed for clear error and legal conclusions are reviewed de novo. *Greene v. Savage*, 583 F.3d 614, 618 (9th Cir. 2009); Fed. R. Bankr. P. 8013.

**II.  Analysis**

BPR raises several arguments on appeal. Foremost is the issue of the Bankruptcy Court's authority to order an accounting in the first instance. The Court addresses this issue first.[3]

**A.  The Bankruptcy Court's Authority to Order an Accounting**

The Joint Plan and subsequent Trust Agreement clearly indicate that the parties to the GH and FHA bankruptcies agreed to resolve disputes before the Bankruptcy Court. Section VII(B) of the Joint Plan states, "[t]he Bankruptcy Court will retain jurisdiction to insure [sic] that the purposes and intent of the Amended Joint Plan are carried out." (2:14-bk-01451-MCW, Doc. 1251 at 56.) Per subsection VII(B)8, this includes the jurisdiction to "enforce and interpret the terms and conditions of the Amended Joint Plan and all controversies and disputes that may arise in connection with the enforcement, interpretation, or consummation of the Amended Joint Plan." *Id.* at 57. Similarly, Article X, paragraph 2 of the Trust Agreement provides, "the Bankruptcy Court . . . shall have exclusive jurisdiction over the Creditor Trust and the Creditor Trustee," including, under Article V, subsection 9, the timely "prepar[ation], fil[ing] and distribut[ion] [of] such additional statements, reports and submissions . . . (B) as may be otherwise requested from time to time by the Creditor Trust Board or the Bankruptcy Court, or as set forth in this

---

[3] Appellee argues in its Response that BPR cannot raise this issue on appeal because it was separately appealed and dismissed by the Bankruptcy Court. However, even if this argument were true as to the Trustee, which the Court declines to decide here, it fails as to BPR because BPR was never a party to this litigation and did not appear on its own behalf until the September 17, 2018 sanctions hearing. In addition, BPR preserved this argument by raising it at the sanctions hearing.

- 6 -

Trust Agreement." (2:13-bk-03201-BMW, Doc. 1065-D at 22-23, 29.)

The Bankruptcy Code provides that bankruptcy courts may hear and determine all "core" proceedings—proceedings arising under title 11 or arising in a case under title 11. 28 U.S.C.A. § 157(b)(1). Proceedings "arising under" title 11 involve causes of action created or determined by a statutory provision of that title. *In re Wilshire Courtyard*, 729 F.3d 1279, 1285 (9th Cir. 2013). Proceedings "arising in" title 11 cases are those that would not exist without a bankruptcy case. *Id.* In *In re Harris Pine Mills*, the plaintiff sued the bankruptcy trustee and the trustee's agents in state court alleging state law tort claims consisting of fraud, negligence, and negligent misrepresentation surrounding the trustee's sale of one of the estate assets the plaintiff unsuccessfully attempted to purchase. 44 F.3d 1434 (9th Cir. 1995). After the trustee removed the case to federal district court and sought to refer it to the bankruptcy court, a dispute arose over whether the state law claims "arose in" the bankruptcy case. *Id.* The Ninth Circuit held that because the plaintiff sued the bankruptcy trustee for the trustee's conduct in administering the bankruptcy estate, the state law claims arose in the bankruptcy case and were subject to federal jurisdiction. *Id.* at 1438. As in *Harris Pine Mills*, the Bankruptcy Court in this case ordered an accounting in conjunction with administration of the bankruptcy estate. Under 28 U.S.C. § 157(b)(2)(A), "matters concerning the administration of the bankruptcy estate" are core proceedings.

Moreover, even if the accounting order were not a core proceeding, the Bankruptcy Court had ancillary jurisdiction to enable it to "vindicate its authority and effectuate its decrees" because it retained jurisdiction to do so. *In re Valdez Fisheries Dev. Ass'n, Inc.*, 439 F.3d 545, 549 (9th Cir. 2006) ("Where a settlement agreement led to the dismissal of a case, a court has jurisdiction to vindicate its authority or effectuate its decree if the court's dismissal order explicitly retained jurisdiction or incorporated the terms of the settlement agreement."). The Bankruptcy Court clearly retained jurisdiction over the Trust Agreement, and BPR does not argue to the contrary. Thus, through its core proceedings jurisdiction or its ancillary jurisdiction, the Bankruptcy Court was authorized to request the accounting underlying the sanctions order.

## B. The Bankruptcy Court's Authority to Issue Sanctions

In addition to its jurisdictional argument regarding the underlying accounting order, BPR argues that the Bankruptcy Court lacked authority to issue sanctions. At the September 17, 2018 hearing on the Order to Show Cause and in its Minute Entry Order of the same date, the Bankruptcy Court cited Federal Rule of Bankruptcy Procedure 9011(c), the contempt powers of 11 U.S. Code § 105(a), and its inherent powers as authority for assessing sanctions. BPR argues (1) that the assessed sanctions were punitive and (2) that none of these sources grant authority to bankruptcy courts to issue punitive sanctions. BPR did not raise these arguments at any point in the proceedings below, and an appellate court will ordinarily not hear an issue raised for the first time on appeal. *Kaass Law v. Wells Fargo Bank, N.A.*, 799 F.3d 1290, 1293 (9th Cir. 2015). Exceptions to this rule exist, however, where: (1) there are exceptional circumstances why the issue was not raised in the trial court; (2) new issues have become relevant while the appeal was pending because of a change in the law; (3) the issue presented is purely one of law and the opposing party will suffer no prejudice as a result of the failure to raise the issue in the trial court; or (4) plain error has occurred and injustice might otherwise result. *Id.* The second and third exceptions are inapplicable here and, in any case, have not been raised by BPR in its appeal. The exceptional circumstances and plain error exceptions, however, require further consideration.

"Exceptional circumstances" are not well-defined in the caselaw. Similarly, the delineation of plain error is "difficult to articulate" and "rests ultimately on the facts of each case." *Bird v. Glacier Elec. Coop., Inc.*, 255 F.3d 1136, 1147 (9th Cir. 2001). Courts engaging in plain error review in civil cases generally do so only when (1) the district court erred; (2) the error was obvious or plain; (3) the error affected substantial rights; and (4) the error "seriously impaired the fairness, integrity, or public reputation of judicial proceedings." *Hoard v. Hartman*, 904 F.3d 780, 787 (9th Cir. 2018). At the August 30, 2018 hearing, the Bankruptcy Court set a "hearing on the contempt order to show cause" with the "hope[] [that] the trust will be able to purge the contempt by complying with the

prior court orders." (Doc. 7-3 at 12.) BPR argues that it "did not prepare to argue against contempt [at the September 17, 2018 hearing] because, according to the procedure set forth by the Bankruptcy Court [on August 30], any suspicion of contempt had been purged. . . . BPR did not have adequate notice that the Bankruptcy Court would go ahead on the contempt issue after the contempt had been purged." (Doc. 28 at 9-10.) Accordingly, BPR concludes, "BPR lacked due process notice that it was subject to sanctions." (Doc. 6 at 34.) BPR asserts it was in full compliance with the Second Accounting Order by the September 17 hearing and was nevertheless assessed sanctions, and the record below appears to confirm BPR's compliance. Taking this and the below discussion of the impermissibility of punitive sanctions into consideration, the Court finds that BPR's argument on appeal satisfies the requirements of the exceptional circumstances or clear error exceptions. The Court will therefore review the Bankruptcy Court's authority to issue sanctions despite BPR's failure to preserve the issue on the record below.

### 1. Federal Rule of Bankruptcy Procedure 9011(c)

Rule 9011(c) allows a bankruptcy court to impose appropriate sanctions on attorneys, law firms, or other parties that submit petitions, pleadings, or other papers for the purpose of harassing, causing unnecessary delay, or other frivolous reasons. Fed. R. Bankr. P. 9011. However, as 9011(c) is limited to imposing sanctions for "papers signed, filed, submitted, or advocated to the court in bad faith," the Rule is inapplicable where sanctions are ordered for *failure* to file. *Hale v. U.S. Tr.*, 509 F.3d 1139, 1148 (9th Cir. 2007). Here, BPR's failure to timely file an accounting is the basis for sanctions. Rule 9011 is thus inapposite in this case.

### 2. 11 U.S. Code § 105(a) and Inherent Authority

Under § 105(a), a bankruptcy court may issue, *sua sponte*, "any order, process, or judgment that is necessary or appropriate to carry out the provisions" of the Bankruptcy Code, including "any determination necessary or appropriate to enforce or implement court orders or rules, or to prevent an abuse of process." The Ninth Circuit has interpreted this language to permit sanctions for civil, but not criminal, contempt. *In re Dyer*, 322 F.3d

1178, 1192 (9th Cir. 2003) ("[T]he contempt authority conferred on bankruptcy courts under § 105(a) is a *civil* contempt authority. As such, it authorizes only *civil* sanctions as available remedies."). For a penalty to be civil, it must be either compensatory or designed to coerce compliance. *Id.* Thus, if the contemnor has no subsequent opportunity to reduce or avoid the fine through compliance and the sanction is not compensatory, the sanction is a criminal contempt sanction and "extends beyond the remedial goals of § 105(a)." *Id.*

As is the case with sanctioning authority exercised pursuant to § 105, in the exercise of any inherent power to sanction, courts are limited to imposing compensatory rather than punitive sanctions. *Goodyear Tire & Rubber Co. v. Haeger*, 137 S.Ct. 1178, 1186 (2017); *see also Dyer*, 322 F.3d at 1196 ("[T]he same reasons underlying our holding that the bankruptcy court lacks the authority to impose serious punitive sanctions under its contempt authority indicate the answer to the parallel question concerning the inherent sanction authority."). In such cases, courts are further limited to awarding to the innocent party the fees the innocent party incurred "solely because of the misconduct" of the sanctioned party. *Goodyear Tire*, 137 S.Ct. at 1186. To assess more than the amount needed to "redress the wronged party 'for losses sustained'" would require a court to provide "procedural guarantees applicable in criminal cases such as a 'beyond a reasonable doubt' standard of proof. . . . When (as in this case) those criminal-type protections are missing, a court's shifting of fees is limited to reimbursing the victim." *Id.* Thus, in imposing sanctions under its inherent authority, a court must "establish a causal link—between the litigant's misbehavior and legal fees paid by the opposing party." *Id.*

While significant deference is given in establishing such a link, *Primus Auto. Fin. Servs., Inc. v. Batarse*, 115 F.3d 644, 649 (9th Cir. 1997), in this case, the Bankruptcy Court nevertheless did not do so. Here, the Bankruptcy Court assessed several different sanctions. First, the Bankruptcy Court ordered BPR to pay $30,000 to the Creditor Trust for the benefit of beneficiaries, for the purpose of "deter[ring] future similar conduct in this case or any other case before this court." (Doc. 7-5 at 34.) The Bankruptcy Court explained that it did not find this sanction excessive "in light of the approximate $1.3 million paid to

the Brinkman Firm after plan confirmation." *Id.* But the purpose of deterring future similar misconduct is not the same as redressing the wronged party—the only acceptable purpose for compensatory sanctions other than coercing compliance.[4] And as of the date the Bankruptcy Court imposed the sanctions, the documents that were the subject of the contempt proceeding had been publicly filed as directed by the Bankruptcy Court. Thus, in imposing the $30,000 fine, the Bankruptcy Court needed to establish a causal link between BPR's "misbehavior and legal fees paid by the opposing party." *Goodyear Tire*, 137 S.Ct. at 1182.

Next, the Bankruptcy Court assessed sanctions of $5,000 each to "the creditors and firms that are represented today by Mr. Jerome and Mr. Carmel for himself and his firm." (Doc. 7-5 at 34.) Although the payment of attorney's fees had been discussed by the parties on the record prior to the imposition of sanctions, (Doc. 7-5 at 3), the Bankruptcy Court did not inquire into specific costs, and the parties did not offer them. The Bankruptcy Court then provided no rationale for assessing these amounts of sanctions to these parties, again failing to establish the requisite causal link.

In assessing sanctions, lower courts have broad fact-finding powers that warrant "great deference"; but where "the justification underlying the decision is not readily apparent from the record," a remand is appropriate. *Primus Auto.*, 115 F.3d at 649. The source of the Bankruptcy Court's authority to assess $40,000 in sanctions is not clear from the record. The Order is therefore vacated with respect to the monetary sanctions and remanded to the Bankruptcy Court to make additional findings and explain its conclusions regarding the basis for and amount of the award and, if necessary, to revise the Order.[5]

---

[4] The Ninth Circuit has previously held that, in addition to coercing compliance and compensating innocent parties, "relatively mild" non-compensatory fines may be permitted under some circumstances (though it has never defined what constitutes a "relatively mild" sanction). *See Zambrano v. Tustin*, 885 F.2d 1473, 1479 (9th Cir. 1989); *F.J. Hanshaw Enters., Inc. v. Emerald River Dev.*, Inc., 244 F.3d 1128, 1137–38 (9th Cir. 2001). However, these cases predate *Goodyear Tire* and may no longer apply. In any case, the Bankruptcy Court's $40,000 is not a "relatively mild" sanction. *See, e.g.*, *Hanshaw*, 244 F.3d at 1137 (implying that any fine above $5,000, at least in 1989 dollars, would be "serious," but declining to reach the question).

[5] BPR also appeals the Bankruptcy Court's revocation of *pro hac vice* status, arguing that this too was an impermissible punitive sanction. Revocation of *pro hac vice* is not a punitive sanction. *See Lasar v. Ford Motor Co.*, 399 F.3d 1101, 1112 (9th Cir. 2005) ("We

# CONCLUSION

The Bankruptcy Court had jurisdiction over the underlying accounting order in this case. However, it is not clear that the Bankruptcy Court had authority to assess the $40,000 sanctions that it ordered.

**IT IS THEREFORE ORDERED** that the Bankruptcy Court's Minute Entry Order Dated September 17, 2018 is affirmed as to the revocation of *pro hac vice* and vacated as to the monetary sanctions. The appeal is remanded for further proceedings consistent with this Order.

**IT IS FURTHER ORDERED** that pursuant to Federal Rule of Bankruptcy Procedure 8024(a), the Clerk of the Court shall enter judgment accordingly.

Dated this 19th day of September, 2019.

_G. Murray Snow_
G. Murray Snow
Chief United States District Judge

---

can find no precedent that . . . these types of sanctions, which do not result in fines or imprisonment, can qualify as criminal sanctions"). A court need only provide "notice and an opportunity to be heard" before revoking an attorney's *pro hac vice* status, and "the opportunity to be heard" does not even require an oral or evidentiary hearing. *See id.* At the September 17, 2018 hearing on the order to show cause, both the U.S. Trustee and Mr. Jerome, the lawyer appearing on behalf of Southwest Medical Services, recommended revocation of *pro hac vice*, among other sanctions. BPR responded to these recommendations by stating in part that it "d[id]n't want to be harmed if we ever get a chance to work on another Arizona case," though "[i]t's kind of pointless in this case because we're going to withdraw" anyway. (Doc. 7-5 at 14.) At no point did BPR make any argument against the Bankruptcy Court's authority to revoke *pro hac vice* or any other argument that *pro hac vice* should not be revoked. Moreover, BPR did not raise any argument against revocation in its briefing, other than to argue that revocation was an impermissible punitive sanction. Under the abuse of discretion standard, a lower court's decision to revoke *pro hac vice* admission need only "be based on criteria reasonably related to promoting the orderly administration of justice . . . or some other legitimate policy of the courts." *In re U.S.*, 791 F.3d 945, 957 (9th Cir. 2015). Here, the Bankruptcy Court revoked BPR's *pro hac vice* because of "some obstructionist conduct in terms of ongoing matters," (Doc. 7-5 at 20.), which it explained at other points during the proceedings included BPR's refusal to comply with court orders. Because the record below evidences BPR's failure to timely comply with court orders, the Court affirms the revocation of *pro hac vice*.

- 12 -